Case: 4:14-cv-01880-CDP   Doc. #: 1-1   Filed: 11/06/14   Page: 1 of 4 PageID #: 31

CORE-Non Solicitation Agreement (updated2) | Gary Hahn | Esign ID: EM31CH6QS-5XRTSULKI | Esigned Date: 9/17/12 | Page: 1 of 5

# KFORCE INC.

## EMPLOYMENT, NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT

THIS AGREEMENT is entered into between   KFORCE INC.   , (hereinafter called the "FIRM") and  Gary         Hahn         (hereinafter called the "EMPLOYEE"), on the  17th  day of  September      2012         . In consideration of the EMPLOYEE's employment or continued employment with the FIRM; the expenditures made by the FIRM in developing trade secrets, confidential information, and client, candidate and employee relationships; the training provided or made available to the EMPLOYEE; the access to the FIRM's trade secrets, confidential information, clients, candidates and employees that will be provided to the EMPLOYEE; as well as the other terms and conditions set forth herein, the FIRM and the EMPLOYEE agree as follows:

**1. Employment.** The FIRM hereby employs or continues to employ the EMPLOYEE and the EMPLOYEE hereby accepts or continues to accept employment upon the terms and conditions hereinafter set forth. The EMPLOYEE shall be subject to the policies, practices, procedures, and business directives that the FIRM adopts and amends from time to time.

**2. Extent of Services.** The EMPLOYEE shall exclusively devote his/her full business time, attention, energy, loyalty and best efforts to the business of the FIRM, and shall not, during the time this Agreement is in effect, engage in any other business activity, whether or not such other business activity is pursued for gain, profit, or other pecuniary advantage, unless such business is fully disclosed to and approved in writing by an authorized representative of the FIRM. However, the foregoing restriction shall not be construed as preventing the EMPLOYEE from investing his/her assets in such other form or manner as will not require any services on the part of the EMPLOYEE in the operation of the affairs of the companies in which such investments are made.

**3. Duties.** The EMPLOYEE is engaged to perform such duties as the FIRM may assign from time to time, including duties necessary or incidental to the operation of a personnel placement/staffing services firm. The precise services of the EMPLOYEE may be extended or curtailed, from time to time, at the direction of the FIRM. In the performance of all his/her duties, the EMPLOYEE agrees to abide by the rules, policies and standards in effect from time to time and/or which may be practiced by the FIRM in its operations.

**4. FIRM Policies and Practices.** The FIRM may, at any time and at its sole discretion, terminate, limit or modify its policies and practices, including compensation and benefit plans, and the EMPLOYEE shall have no right to the continuation of such policies, practices or plans in any particular form or for any particular period.

**5. Termination of Employment.** The term of employment of the EMPLOYEE, or the continuation of employment of the EMPLOYEE, shall be at the will of the EMPLOYEE or the FIRM. Either party may terminate this Agreement immediately, for any reason, with or without cause.

**6. Confidential Information.** The EMPLOYEE recognizes and acknowledges that the FIRM has, through the expenditure of substantial time, effort and money, developed, compiled and/or acquired certain confidential information and trade secrets which are of great value to the FIRM in its operations. The EMPLOYEE further acknowledges and understands that in the course of performing his/her duties for the FIRM, he/she will receive and/or have access to the trade secrets and other confidential information of the FIRM.

EXHIBIT A

Case: 4:14-cv-01880-CDP   Doc. #: 1-1   Filed: 11/06/14   Page: 2 of 4 PageID #: 32

The EMPLOYEE agrees that he/she will not make any use of, take, download, publish or disclose, or authorize anyone to use, take, publish or disclose, any of the FIRM's trade secrets or other confidential information, for any reason, except to the extent authorized and required in the course of performing his/her duties on behalf of the FIRM. Upon request of the FIRM, the EMPLOYEE will promptly return or destroy all expressions of trade secrets and confidential information in his/her possession and control. EMPLOYEE shall cooperate with the FIRM's efforts to verify such return or destruction.

As used herein, the term "trade secrets and other confidential information" shall include, without limitation: (a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring mangers); (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information.

**7. Return of FIRM Property.** All information, data, lists, files, business forms, manuals, policies, training materials, communications and all other intellectual property compiled, maintained, received or used by the EMPLOYEE in the course of his/her employment with the FIRM is and shall remain at all times the exclusive property of the FIRM. Upon termination of the EMPLOYEE"s employment for any reason, the EMPLOYEE shall immediately return to the FIRM any and all tangible and intangible property of the FIRM, in whatever form, in the EMPLOYEE's possession, custody or control, including but not limited to trade secrets and confidential information as defined in the preceding section.

**8. Non-Solicitation Covenants.** a) <u>Covenants relating to clients</u>: the EMPLOYEE agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit or accept business that is competitive with the FIRM from any client with whom the EMPLOYEE had contact while employed by the FIRM, nor will the EMPLOYEE for such period directly or indirectly attempt to divert or assist others to divert any such clients' business from the FIRM to a competitor.

b) <u>Covenants relating to staffing candidates, applicants, temporary employees and consultants</u>: the EMPLOYEE further agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit, recruit, hire or place on assignment any staffing candidate, applicant, temporary employee or consultant with whom the EMPLOYEE had contact while employed by the FIRM, nor will EMPLOYEE directly or indirectly attempt to divert or assist others to divert such candidates, applicants, temporary employees and consultants from the FIRM.

c) <u>Covenants relating to core employees</u>: The EMPLOYEE further agrees that upon termination of his/her employment for any reason the EMPLOYEE will not, for a period of twelve (12) months from the date of termination directly or indirectly solicit any of the FIRM's core (internal) employees for employment with any other person, company, firm, or business, nor will EMPLOYEE directly or indirectly attempt to divert or assist others to divert such employees from the FIRM.

Case: 4:14-cv-01880-CDP   Doc. #: 1-1   Filed: 11/06/14   Page: 3 of 4 PageID #: 33

**9. Use of the FIRM'S Name or Trademarks.** Following termination of the EMPLOYEE's employment with the FIRM, the EMPLOYEE shall not use or permit the use of the FIRM's name or trademarks in any advertising, notice, solicitation or other business materials, including but not limited to indications that the EMPLOYEE was formerly employed by the FIRM.

**10. Legal Obligations to Others.** The EMPLOYEE represents, warrants and covenants that he/she has not taken, utilized or disclosed, and will not take, utilize or disclose, any trade secrets or confidential information of any previous employer, nor will the EMPLOYEE engage in activity that violates a valid and enforceable legal obligation owed to such previous employer.

**11. Enforcement.** The EMPLOYEE agrees that, in the event of a breach or threatened breach by the EMPLOYEE of any of the provisions or covenants contained in paragraphs 6, 7, 8, and 9 of this Agreement, the FIRM shall be entitled to the entry of a temporary, preliminary or permanent injunction (without any bond or other security being required) against the EMPLOYEE in any suit in equity brought for the purpose of enforcing such provisions or covenants. The consent to and the availability of an injunction as set forth above shall not preclude or prevent the FIRM from seeking or recovering monetary damages under appropriate circumstances, or pursuing other appropriate remedies. The provisions of this Agreement shall not be construed as limiting any of the FIRM's rights under the Uniform Trade Secrets Act, as adopted, or under any other laws (whether statutory or common law) including, but not limited to, laws relating to confidential information, unfair competition, computer misconduct, and fiduciary duty.

The existence of any claims or cause of action that the EMPLOYEE may have against the FIRM, whether predicated upon a breach of any part of this Agreement by the FIRM or otherwise, shall not constitute a defense to the enforcement by the FIRM of any of the covenants and obligations contained in paragraphs 6, 7, 8 and 9 of this Agreement.

**12. Assignment.** This Agreement may be assigned by the FIRM and shall inure to the benefit of and be binding upon the FIRM's successors and assigns. This Agreement may not be assigned by EMPLOYEE. EMPLOYEE expressly acknowledges that the provisions of paragraphs 6, 7, 8, 9 and 11 of this Agreement are intended to be enforceable by any such successors and assigns as well as by any entity affiliated with the FIRM. In the event the EMPLOYEE is transferred to another location or assigned to a current or future subsidiary or separate business unit affiliated with the FIRM, this Agreement shall remain in full force and effect and binding upon EMPLOYEE.

**13. Waiver of Breach.** The waiver of the FIRM of a breach of any provision of this Agreement by the EMPLOYEE, or a breach of any provisions in similar agreements between the FIRM and any other employee, shall not operate or be construed as a waiver of any subsequent breach by the EMPLOYEE.

**14. Invalidity of Provisions.** If any covenant or part thereof, or other provision of this Agreement is invalid, illegal or incapable of being enforced, by reason of any rule of law or public policy, all other conditions and provisions of this Agreement shall, nevertheless, remain in full force and effect, and no covenant or provision shall be deemed dependent upon any covenant or provision unless so expressed herein. If, moreover, any provision of this Agreement shall for any reason be held to be excessively broad as to time, geographical scope, activity or subject, it shall be deemed amended to the extent necessary for such provision to be held valid and enforceable.

Case: 4:14-cv-01880-CDP   Doc. #: 1-1   Filed: 11/06/14   Page: 4 of 4 PageID #: 34

CORE-Non Solicitation Agreement (updated2) | Gary Hahn | Esign ID: EM31CH6QS-5XRTSULKI | Esigned Date: 9/17/12 | Page: 4 of 5

**15. Reasonable and Necessary Restrictions.** The EMPLOYEE agrees that the covenants and restrictions contained in this Agreement are both reasonable and necessary.

**16. Entire Agreement.** This instrument contains the entire agreement of the parties on the matters contained herein. This Agreement may not be waived, changed or modified orally but only in writing by an amendment hereto signed by the parties.

**17. Survival.** It is mutually agreed that the terms of this Agreement shall remain in full force and effect regardless of any changes that may subsequently occur in the EMPLOYEE's remuneration, location, title, duties and/or scope of responsibility. The provisions of paragraphs 6, 7, 8, 9 and 11 shall survive the termination of this Agreement. The EMPLOYEE agrees that, following the EMPLOYEE's termination of employment from the FIRM, the FIRM, in its discretion, may notify any subsequent employer or prospective employer of the EMPLOYEE of the terms and obligations of this Agreement.

**18. Voluntary Agreement/No Inducements.** The EMPLOYEE hereby acknowledges and represents that the EMPLOYEE (a) has fully and carefully read this Agreement prior to signing it; (b) has been, or has had the opportunity to be, advised by independent legal counsel of his/her own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement; and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT effective on the date first set forth above.

EMPLOYER:  KFORCE INC.

By: _____
Douglas Rich, VP Human Resources

EMPLOYEE:  *I understand and acknowledge that the attached document requires the use of electronic signatures. I acknowledge and agree to the use of electronic signatures and understand that my electronic signature has the same force and effect as an original signature.*

*Gary S. Hahn*
(Signature)

9/17/12
Date